Stephen M. Harris , Esq. (State Bar Number: 110626)
email: stephen@smh-legal.com
LAW OFFICES OF STEPHEN M. HARRIS, P.C.
6320 Canoga Avenue, Suite 1500
Woodland Hills, California 91367
Telephone:  (818) 924-3103
Facsimile:   (818) 924-9079

Robert L. Starr, Esq. (State Bar Number: 183052)
email: robert@starrlaw.com
Adam M. Rose, Esq. (State Bar Number: 210880)
email: adam@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23277 Ventura Boulevard
Woodland Hills, California 91364
Telephone: (818) 225-9040
Facsimile:  (818) 225-9042

Attorneys for Plaintiff
TRISH HERREMANS, individually, and on behalf
of a class of similarly situated individuals

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| TRISH HERREMANS, individually, and on behalf of a class of similarly situated individuals,<br><br>            Plaintiff,<br><br>      v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>            Defendant. | NO.   CV14-2363 MMM(PJWx)<br><br>Assigned for All Purposes to the Honorable Margaret M. Morrow – Courtroom 780<br><br>Date:        January 25, 2016<br>Time         10:00 a.m.<br>Courtroom:      780<br><br>Date Action Filed:   March 27, 2014<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITES** |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

RECORD:

PLEASE TAKE NOTICE THAT on January 25, 2016 at 10:00 a.m., or as

-1-

soon thereafter as the matter may be heard in Courtroom 780 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California, 90012, Plaintiff Trish Herremans ("Plaintiff" or "Herremans") will and hereby do move this Court to:

1.      Preliminarily approve the Settlement Agreement and Release ("Agreement" or "Settlement"), attached as Exhibit 1 to the Declaration of Stephen M. Harris ("Harris Declaration").

2.      Preliminarily approve the Notice and Claim Form attached as exhibits 2-3 to the Harris Declaration.

3.      Permit the filing of Plaintiff's Fourth Amended Complaint for settlement purposes, attached as exhibit 4 to the Harris Declaration.

4.      Conditionally certify, for settlement purposes only, a settlement class of all persons throughout the United States who currently own or lease or who previously owned or leased MINI (a.k.a. BMW) R55, R56, R57, R58, R59, and R60 vehicles, made for sale and/or lease in the U.S. market, with a production date between October 2006 through November 2012 and that were sold or leased to a Class Member who registered and operated the vehicle in the United States or Puerto Rico.

3.      Appoint Plaintiff as the Class Representative.

4.      Appoint Stephen M. Harris of the Law Offices of Stephen M. Harris, P.C., and Robert L. Starr of the Law Offices of Robert L. Starr, APC as Class Counsel.

5.      Set a hearing date for final approval of the class action settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the attached Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Harris Declaration, and the exhibits attached thereto; (4) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, filed concurrently herewith; (5) the records, pleadings, and papers filed in this action; and (6) upon such other documentary and oral evidence or

1   argument as may be presented to the Court at the hearing of this Motion.

2

3   Dated: December 7, 2015            LAW OFFICES OF STEPHEN M. HARRIS, P.C.

4

5

6                                      By:  /s/ Stephen M. Harris

7                                      Stephen M. Harris
                                       Attorneys for Plaintiff
8                                      TRISH HERREMANS,
                                       individually, and on behalf of a class
9                                      of similarly situated individuals

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Table of Contents

I. INTRODUCTION ................................................................................8

II. FACTS AND PROCEDURE...........................................................9

    A.          Named Plaintiff's Lease and Purchase of a
Class Vehicle with Water Pump Defect ..........................................9

    B.          Class Members Similar Experience .................................9

    C.          Plaintiff's Allegations in TAC Regarding the
Water Pump Defect ........................................................................10

    D.          The Class Action Complaint Against BMW.................13

    E.          Investigation And Discovery..........................................13

    F.          The Mediation/Settlement Agreement ...........................14

    G.          The Proposed Settlement.................................................14

        1.        The Proposed Settlement Class ......................................14

        2.        The Proposed Payment and Reimbursement
Schedule      15

        3.        The Proposed Notice to the Class and Others
of the Settlement    16

        4.        The Proposed Release of the Class ...............................17

        5.        Attorneys' Fees, Costs and Enhancements ...................17

III. ARGUMENT ................................................................................17

    A.          The Proposed Class Action Settlement Should
Receive Preliminary Approval .......................................................17

        1.        Overview of the Class Action Settlement
Process and the Role of Preliminary Approval ..............................17

        2.        The Proposed Settlement Is Well Within the
Range of Reasonableness Warranting Preliminary Approval and
Justified in Light of the Risks of Continued Litigation................18

    B.          Conditional Class Certification Is Appropriate
for Settlement Purposes.................................................................20

        1.        The Proposed Class Meets the Requirements
of Rule 23    20

        2.        The Proposed Class Is Sufficiently Numerous
and Ascertainable 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3.　　　　　There are Questions of Law and Fact that Are Common to the Class..............................................................21

4.　　　　　Plaintiff's Claims are Typical of the Proposed Settlement Class　22

5.　　　　　Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class　　　23

6.　　　　　Common Issues Predominate Over Individual Issues　24

7.　　　　　Class Settlement Is Superior to Other Available Means of Resolution ......................................................25

C.　　　　　The Proposed Notice Plan Meets the Requirements of Rule 23 ................................................................26

IV. CONCLUSION ................................................................28

**Cases**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ..................... 20

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); .......................................... 21

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ........................................... 23

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) ............... 22

*Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. Ohio 2006) ....................... 22

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ............................................................................................................. 21

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); ................................. 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998) .................... 21

*Hanlon*, 150 F.3d at 1020 ................................................................................ 22, 23

*Hanlon*, 150 F.3d at 1022 ................................................................................ 22, 24

*Hanlon*, 150 F.3d at 1023 ................................................................................ 25, 26

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) ............... 21

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-174 (S.D.N.Y. 2000). .......................................................................... 19

*In Re General Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda County 2008) .................................................................... 19

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d. Cir. 1995). ........................................................................................ 20

*In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). ........................................................................................................... 18

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). ........................................................................................................... 22

*Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)). ...................................... 23

*Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ..................... 20

*Mazza*, 666 F.3d at 589 ........................................................................................... 22

*Mazza*, 666 F.3d at 594 ........................................................................................... 24

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008) ............................................................................................................. 22

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) ..................................... 22

*Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th
   Cir. 1969)................................................................................................21

*Tait v. BSH Home Appliances Corp.*, SA CV 10-0711 DOC, 2012 WL
   6699247 (C.D. Cal. Dec. 20, 2012)..........................................................25

*U.S. v. Ford Motor Corp.*, 453 F. Supp. 1240, 1243, 1246 (D. D.C.
   1978).........................................................................................................10

*United States v. General Motors Corp.*, 417 F. Supp. 933, 938 (D.D.C.
   1976).........................................................................................................10

*US. v. General Motors Corp.*, 518 F.2d 420,427 (C.A.D.C. 1975) .......................10

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121
   (E.D. Cal. 2009)........................................................................................21

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir.
   2010).........................................................................................................22

*Wolin*, 617 F.3d at 1173 ...........................................................................................24

*Wolin*, 617 F.3d at 1175 ...........................................................................................26


**<u>Statutes</u>**

Fed. R. Civ. P. 23(a) (1)...........................................................................................21

Fed. R. Civ. P. 23(a) (2)...........................................................................................21

Fed. R. Civ. P. 23(a) (4)...........................................................................................23

Fed. R. Civ. P. 23(b) (1), (2) or (3)..........................................................................24

Fed. R. Civ. P. 23(b) (3))..........................................................................................24


**<u>Treatises</u>**

Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004). ..............................18

Manual for Complex Litigation, § 21.632; 4 Newberg & Conte, § 11.25 .............18

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Herremans belongs to a putative nationwide class of current and former owners and lessees of certain Mini Cooper Vehicles, with a production date from October of 2006 through November of 2012, which were distributed by BMW of North America, LLC ("BMW"). She allege that defects in the design, manufacture, and assembly of mechanical water pumps installed in the class vehicles resulted in the engine overheating and potential catastrophic engine failure of the Class Vehicles. Plaintiff further alleges that the water pump failure is due to the sealed two roll ball bearing system installed in the mechanical water pumps ("Water Pump Defect") (Docket No 43, Third Amended Complaint ["TAC"] ¶¶ 4-8).

Plaintiff and BMW have reached a settlement of nationwide class claims subject to approval by this Court. BMW has agreed to reimburse all class members who have, or will, incur costs in connection with repairing or replacing failed mechanical water pumps.  BMW's obligations are based upon the payment and reimbursement provisions of the Agreement, more fully described below and in the Agreement attached as exhibit 1. (See, Exhibit 1 to Harris Declaration).

Plaintiff and her counsel believe the Settlement is fair and reasonable, providing class members' similar if not superior remedies than they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with trial.

Plaintiff respectfully requests that this Court review the negotiated Agreement, attached as Exhibit 1 to the accompanying Harris Declaration, and enter an order: (1) granting preliminary approval of the Settlement; (2); permitting the filing of the Fourth Amended Complaint, attached as exhibit 4 to the Harris Declaration; (3) certifying a class for settlement purposes and appointing Plaintiff as class representative and Plaintiff's counsel as class counsel; (4) approving the parties'

1  proposed form and method of giving class members notice of the action and

2  proposed Settlement; (5) directing that notice be given to class members in the

3  proposed form and manner; and (5) setting a hearing on whether the Court should

4  grant final approval of the Settlement, enter judgment, award attorneys' fees and

5  expenses to Plaintiff's counsel, and grant incentive awards to Plaintiff.

**II.**

**FACTS AND PROCEDURE**

**A.    Named Plaintiff's Lease and Purchase of a Class Vehicle with Water
         Pump Defect**

Plaintiff purchased a new 2009 Mini Cooper ("Vehicle") in November of 2008.  (TAC ¶ 20.) This vehicle was distributed, advertised, marketed and warranted by BMW, and bears the Vehicle Identification No. WMWMF73579TT95691. (*Id.*) In January of 2013, after a previous repair under warranty for the same problem, Herreman's Vehicle had to undergo a second repair due to the mechanical water pump leaking, and Herremans paid $1,700 in connection with the repair. (TAC, ¶ 23.) BMW refused to pay for or reimburse Herremans for the cost of these repairs.  (TAC, ¶¶ 21-22.)

All Class Vehicles when purchased new came with a New Car Limited Warranty covering defects in the materials and workmanship for a period of 50,000 miles or four (4) years, whichever occurs first.  (TAC, ¶ 47.)

**B.    Class Members Similar Experience**

BMW has furnished Plaintiff with information relating to mechanical water pump failures in California, where most Vehicles are sold. (Harris Declaration, ¶ 13.)

During October of 2006 to November of 2012, BMW utilized a thermoplastic housing on the water pump in the Class Vehicles. During this time period, paid warranty and goodwill claims of California owners of Mini Vehicles (with plastic housing on the water pump) were approximately 7.5% all such Vehicles sold in California. In 2013 to 2014, after BMW began producing Class Vehicles with an

1  alloy Water pump, Warranty claims for Mini vehicles relating to water pump failure

2  plunged to approximately 1% of or less of vehicles sold in California.[1] To date,

3  BMW has spent $3,800,374.28 in warranty and goodwill repairs associated with

4  vehicles experiencing failure of the mechanical water pump. (This entails

5  approximately 9,421 claims granted under warranty or good will.) (See, Harris

6  Declaration, ¶¶ 14-15.)

7  **C.**   **Plaintiff's Allegations in TAC Regarding the Water Pump Defect**

8      The Class Vehicles are equipped with the mechanical water pump, which

9  circulates water throughout the engine. (TAC ¶¶ 3-4.) The mechanical water pump is

10 bolted to the engine block. (*Id.*) The mechanical water pump contains a metal shaft.

11 (*Id.*, ¶ 4.) One side of the metal shaft is connected to a pulley which is driven by the

12 engine. The pulley spins, causing the metal shaft to spin. The other side of the metal

13 shaft is connected to an impeller, which is used to circulate water throughout the

14 engine. (*Id.*) A sealed bearing is used to connect the metal shaft to the rest of the

15 mechanical water pump. The sealed bearing allows the metal shaft to spin while still

16 being connected to the rest of the mechanical water pump, and also acts as a barrier

17 in order to prevent water from leaking from the mechanical water pump. (*Id.*)

18     The original mechanical water pump installed in the Class Vehicles used a two

19 row ball bearing system, with the ball bearings being encased in two ball bearing

20 cages. The cages were then encased in a sealed bearing system. This bearing system

21 would allow the metal shaft to spin, while the remainder of the mechanical water

22 pump would remain bolted to the engine. This would in turn spin the impeller, which

23 ───────────────

24 [1] See *US. v. General Motors Corp*., 518 F.2d 420,427 (C.A.D.C. 1975) (defect exists where a significant (i.e., non-"de minimus") number of failures occur); *U.S. v. Ford Motor Corp*., 453 F. Supp. 1240, 1243, 1246 (D. D.C. 1978) (finding existence of defect based on replacement-part sales data); *United States v. Ford Motor Co*., 421 F. Supp. 1239, 1241-42 (D.D.C. 1976) (existence of defect based on warranty return rate of 2%); *United States v. General Motors Corp*., 417 F. Supp. 933, 938 (D.D.C. 1976) (GM stipulates that 300 fires in population of 375,000 vehicles constituted a significant number on which to base finding of defect), aff'd, 565 F.2d 754 (D.C. Cir. 1977).

28

1  would circulate water throughout the engine. (*Id.*)

2          The amount of stress placed on the sealed bearing system by the drive
3  pulley exceeds the engineering limitations of the two row ball bearing design.  As a
4  result, the sealed two roll ball bearing system installed in the mechanical water
5  pumps has experienced a very high failure rate, and is unreliable.  When the two
6  row ball bearing system fails, the mechanical water pump leaks, makes noise, and
7  the metal shaft can also stop rotating. (*Id.*)

8          When a mechanical water pump leaks a sufficient amount of water, or when
9  the metal shaft stops spinning, this results in engine overheating "the Water Pump
10 Defect". With regard to the mechanical water pumps leaking, and with regard to the
11 metal shaft ceasing, this poses a serious safety hazard, because if this problem is
12 not remedied, it will result in an affected Class Vehicle's engine overheating.
13 When an engine overheats while it is being driven, this results in catastrophic
14 engine failure. Catastrophic engine failure while a Class Vehicle is being driven in
15 traffic poses a serious safety hazard. When the engine of a Class Vehicle fails to
16 function while the Class Vehicle is being driven in traffic, the affected Class
17 Vehicle loses the ability to accelerate. Furthermore, the affected Class Vehicle's
18 steering and braking abilities are severely diminished, due to the power braking and
19 power steering system not being able to properly function. (*Id.*, ¶¶ 5-6.)

20          BMW did not dispute the fact that the mechanical water pumps failed, but
21 instead argued that this was due to the composition of the mechanical water pump.
22 BMW states that a change of design in the pump, to use an alloy cover rather than a
23 plastic one, was followed by the dramatic decline in the failure rate outlined above.
24 (Harris Declaration, ¶¶ 9, 14-15.)

25          The Class Vehicles consist of MINI R55, R56, R57, R58, R59, and R60
26 vehicles, with a production date from October of 2006 through November 2012, as
27 more fully described in the Agreement. (Agreement § I, ¶¶ 10-16.) Approximately
28 165,000 Class Vehicles were sold in California. (Harris Declaration, ¶¶ 14-15.)  The

1   majority of Class Vehicles were sold in California.  (Harris Declaration, ¶ 13.)

2        The costs of the Water Pump Defect to consumers can be and often are

3   exorbitant, because consumers have been and will continue to be required to pay

4   hundreds if not thousands of dollars both to diagnose and repair the damages

5   caused by the Water Pump Defect.  Additionally, the presence of the Water Pump

6   Defect in the Class Vehicles has resulted in the vehicles having diminished value,

7   thereby depriving Plaintiff and the Class Members of the benefit of the vehicle (and

8   its value) that they paid for. (TAC, ¶ 8.)

9        Plaintiff alleges BMW was aware of the Water Pump Defect before Plaintiff

10  purchased her Class Vehicle through sources not available to plaintiff or Class

11  Members, including but not limited to internal testing, consumer complaints,

12  Technical Service Bulletins, prior water pump design experience, the redesign of the

13  water pump system, aggregate data from BMW's dealers (such as warranty data,

14  goodwill data, repair data and parts purchases), reports from the National Highway

15  Transportation and Safety Administration ("NHTSA"), and from other internal and

16  external sources.  (TAC, ¶¶ 10, 12-13, 15-18.)

17       Warranty and goodwill claims of owners of Mini vehicles with this design of

18  the Water Pump (all class vehicles) dramatically rose to approximately 7.5% of all

19  Class Vehicles sold in California, which is where the bulk of MINI vehicles were

20  sold. Indeed, to date, BMW has spent over 3.8 million dollars reimbursing its

21  customers in California for warranty and goodwill claims relating to the failure of the

22  mechanical water pump. (This entails approximately 8,800 claims granted under

23  warranty or good will up to 2012, and a total of over 9,400 claims through 2014.)

24  (See, Harris Declaration, ¶¶ 9, 13-15.)

25       Despite BMW being on notice of the defect from various internal and external

26  sources, BMW has not recalled the Class Vehicles to repair the Water Pump Defect,

27  has not offered all of the owners and lessees of Class Vehicles a suitable permanent

28  repair free of charge, and has not offered to reimburse all owners and lessees of Class

1  Vehicles who incurred costs relating to the Water Pump Defect, including costs
2  related to inspections/diagnosis, and repair of the Class Vehicles. (TAC, ¶¶ 55-59.)

3  **D.**  **The Class Action Complaint Against BMW**

4       On March 27, 2014, Herremans brought a class action against BMW on behalf
5  herself and a class of California consumers alleging (1) violations of California
6  Consumer Legal Remedies Act, (2) violations of California Unfair Business
7  Practices Act, and (3) fraud.  (Docket No. 1.)  After the filing of the First Amended
8  Complaint, BMW brought a motion to dismiss, which was opposed by Herremans.
9  The court granted the motion, with leave to amend. (Docket No. 30.)

10       Herremans then filed a Second Amended Complaint. BMW again brought a
11  motion to dismiss, which was opposed by Herremans.  The court again granted the
12  motion, with leave to amend. (Docket No. 42.) Herremans then filed a third amended
13  complaint on March 11, 2015. (Docket No. 43.) BMW declined to file another
14  motion to dismiss, and instead agreed to participate in a mediation. (Harris
15  Declaration, ¶ 5.) BMW filed its answer to operative complaint on March 25, 2015.
16  (Docket No. 47.)

17  **E.**  **Investigation And Discovery**

18       Plaintiff conducted a pre-filing and post-filing investigation, including, but not
19  limited to, retaining an expert consultant regarding water pump failures, detailed
20  analysis of the design of the mechanical water pump in existence prior to the change
21  of the design by BMW, review of technical service bulletins, review of publicly
22  available information relating to the nature and extent of the mechanical water pump
23  problem, and obtaining and reviewing approximately 3,000 pages of documents
24  produced by BMW in response to Plaintiff's formal discovery requests. Plaintiff
25  monitored complaints on NHTSA, reviewed data concerning MINI sales, and
26  obtained informally from BMW sales data, warranty and good will claims data, call
27  center records, PUMA records (relating to customer complaints), as well as design
28  data. (Harris Declaration, ¶¶ 11-13.)

**F.     The Mediation/Settlement Agreement**

On May 19, 2015, the parties participated in a full day mediation session with the honorable Edward A. Infante. The parties were able to agree on all aspects of the settlement (other than attorneys' fees, costs, and enhancement) after this mediation session, including agreement to a nationwide class for settlement purposes only, and signed a document titled "Herrreman's Settlement Matrix" after the conclusion of these negotiation sessions. After the mediation, the parties negotiated the attorneys' fees, costs, and the enhancement amount and ultimately agreed to these terms in July of 2015. (Harris Declaration, ¶¶ 16-17.)

Thereafter, the parties negotiated the formal settlement agreement, notice and claim form. The parties were able to come to final agreement regarding the terms of these documents in November of 2015. The one issue the parties cannot agree to is whether it is appropriate to refer to the web site of counsel for Plaintiff in the notice and claim form, or whether the only web site which should be identified is the claims administrator's. (Harris Declaration, ¶¶ 18-19.)

As part of the settlement, Plaintiff submits a proposed Fourth Amended Complaint, to be filed consistent with the settlement, and asserting claims on a nationwide basis. (Harris Declaration, ¶ 20.)

The court granted several extensions of time for Plaintiff to file a class certification motion, or this motion for preliminary approval, while the parties continued with their negotiations. (See, Docket No.'s 48, 53, and 55.) Ultimately, the court granted the stipulation of the parties to have the motion filed and heard on the present date. (See, Dockets No.'s 56-57.)

**G.     The Proposed Settlement**

**1.     The Proposed Settlement Class**

The settlement class consists of "all residents in the United States (including Puerto Rico), who currently own or lease or previously owned or leased, a Class Vehicle" ("Settlement Class"). (Agreement, § I, ¶ 10).) Excluded from the Settlement

Class are the following: "(1) MINI [BMW], its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) insurers of the Class Vehicles; (3) all persons and/or entities claiming to be subrogated to the rights of Class Members; (4) issuers or providers of extended vehicle warranties or extended service contracts; (5) individuals and/or entities who validly and timely opt-out of the Settlement; (6) consumers or businesses that have purchased Class Vehicles previously deemed a total loss (i.e. salvage) (subject to verification through Carfax or other means); (7) current and former owners of a Class Vehicle who previously have released their claims against MINI with respect to the issues raised in the Litigation; (8) United States and Puerto Rico residents who have purchased Class Vehicles in the United States but have since transported the vehicle outside the United States for permanent use abroad; (9) any current or former owner or lessee of a Class Vehicle that has received or obtained a goodwill or warranty replacement of a Water Pump (unless the consumer had to pay or share in some portion of the cost of a goodwill replacement); (10) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children); (11) individual or entities that have purchased and/or leased Class Vehicles as "fleet" vehicles (i.e. rentals or company vehicles); and (12) Class Vehicles that were involved in accidents that resulted in damage and subsequent need to replace a Water Pump." (*Id.*)

## 2. __The Proposed Payment and Reimbursement Schedule__

BMW's warranty normally extends only to four years or 50,000 miles, whichever comes first. (Harris Declaration, ¶ 23.) Here, the Settlement permits class members to obtain reimbursement for out of pocket payments for past or future water pump repairs up to seven years after the vehicle is first placed in service, or up to 84,000 miles on the odometer, whichever occurs first. (Agreement, § I, ¶¶ 28, 38, 40, and §, ¶¶ A and B).)

A water pump repair under the settlement includes repair or replacement of the

water pump, coolant, bolts, and gasket following a water pump failure, and reasonable labor costs for repair. (*Id.*, § I, ¶ 40.) The maximum amount a class member shall be reimbursed for a water pump repair is $500. (*Id.,* ¶ 25.) In contrast, the data BMW has furnished relating to the cost of the warranty and good will claims paid to date establishes that the average cost of a water pump repair is $388.94. (Harris Declaration, ¶ 10.)

### 3.   The Proposed Notice to the Class and Others of the Settlement

A Settlement Administrator is to be appointed under the Agreement who will disseminate notice of the Settlement and the hearing on a Final Approval Motion (see, Exhibit 2 of the Harris Declaration; Agreement §I, ¶ 9, § V). Notice will be sent by First-Class U.S. Mail, postage paid, to potential Settlement Class members, including current and prior owners and lessees of Class Vehicles. The procedure for giving notice to potential Settlement Class members is set forth in Section I, Paragraph 26 and Section IV, paragraphs A-E, of the Agreement. In addition to mail notice, the settlement administrator will maintain a toll free number and web site dedicated to advising Class Members about the Settlement. (*Id.*) The web site, notice and toll free number will also include Class Counsel's contact data so that Class Members may contact Class Counsel and obtain their assistance with any questions they may have. (*Id.*)

Class members will have 90 days to submit a claim from the date of transmission of the notice, and can do so via mail, email, or facsimile. (Agreement, § I, ¶¶ 2, 26; §§ IV-V; Ex.'s 2-3 to Harris Declaration.)  Class members who experience a water pump failure after the effective date of the settlement can have a repair performed by BMW, which will cover 100% of the costs during the warranty period provided for in the settlement. (Agreement, *§* I, ¶¶ 19, 38; § III, ¶ B.) Class members can also appeal denial of their claims. (Agreement, § V, ¶ F.)

The Settlement Agreement, at Section VI, establishes the procedure for those potential Settlement Class members who wish to be excluded from the settlement;

1 Section VII establishes the procedure for those potential Settlement Class members

2 who wish to object to the settlement.

3     **4.**    **The Proposed Release of the Class**

4     Class Members who do not opt out of the Settlement according to the

5 procedures set forth in the Settlement Agreement shall release any and all claims

6 (including unknown claims) or causes of action that were, or could have been,

7 asserted by Plaintiff or any Class Members against BMW, regarding the Water Pump

8 or Water Pump Repair on Class Vehicles as alleged in the Action (excluding

9 potential claims for personal injury, property damage or claims for subrogation).

10 (Agreement, § VIII, ¶ 5.)

11     **5.**    **Attorneys' Fees, Costs and Enhancements**

12     The Agreement contains provision relating to class counsel's attorneys' fees

13 and costs, as well as the recommended enhancement payment. (*Id.*, § IX.)

14                          **III.**

15                  **ARGUMENT**

16 **A.**   **The Proposed Class Action Settlement Should Receive Preliminary**

17     **Approval**

18     **1.**    **Overview of the Class Action Settlement Process and the Role of**

19         **Preliminary Approval**

20     A class action settlement like the one proposed here must be approved by the

21 Court to be effective. *See* Fed. R. Civ. Proc. 23(e).  Court approval occurs in three

22 steps: (1) a preliminary approval hearing, at which the court considers whether the

23 proposed settlement is within the range of reasonableness meriting final approval; (2)

24 a notice and comment stage, during which class members are informed about the

25 proposed settlement and given an opportunity to object; and (3) a "formal fairness

26 hearing," or final approval hearing, at which the court decides whether the proposed

27 settlement should be approved as fair, adequate, and reasonable to the class. *See*

28 Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004).

Whereas at the final approval stage the Court must decide whether the parties negotiated a settlement that is fair, reasonable, and adequate to class members, at the preliminary approval stage, the Court need only decide whether the settlement falls within a range of reasonableness possibly meriting final approval (i.e., whether it would be worthwhile to give the class notice of the settlement and proceed with a formal fairness hearing). *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."); 4 Newberg & Conte, § 11.25.  If the settlement has no obvious deficiencies, then it falls within the range of possible approval. *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, pointing out any settlement terms that are so unacceptable at the outset that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation, § 21.632; 4 Newberg & Conte, § 11.25.

Plaintiff asks the Court to take the first step in the settlement approval process and grant preliminary approval of the Settlement. Plaintiff further requests that the Court provisionally certify the Settlement Class, appoint Plaintiff as Class Representative and her attorneys as Class Counsel, order dissemination of notice to Class Members, and set a date for the final approval hearing.

**2.**     **The Proposed Settlement Is Well Within the Range of Reasonableness Warranting Preliminary Approval and Justified in Light of the Risks of Continued Litigation**

The settlement presented by the parties contains no obvious deficiencies and

1   does not provide for excessive attorneys' fees at the expense of the class.  Indeed, as

2   its terms were negotiated at arm's length by experienced counsel[2] knowledgeable in

3   complex class litigation, and with the assistance of a retired United States District

4   Court Judge, the settlement enjoys a presumption of fairness.  *See*, e.g., *In re*

5   *Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-174 (S.D.N.Y.

6   2000).  "Once the Settlement is presumed fair, it is not for the Court to substitute its

7   judgment as to a proper settlement for that of such competent counsel."  *Id*. (internal

8   quotes omitted).

9          An objective evaluation confirms that the benefits negotiated for the class are

10  well within the range of reasonableness. It follows that the class is now receiving,

11  through a settlement, nearly as much as could reasonably be expected after a

12  successful trial verdict. The alternative would be protracted litigation that would

13  leave class members uncompensated, and many completely unaware that their

14  vehicles suffer from a Water Pump Defect, a problem which poses of a risk of the

15  vehicles coming to a stop on the road or highway.

16         If the parties had been unable to resolve this case through settlement, the

17  litigation could have been even more expensive and lengthy.  For instance, in a case

18  against General Motors alleging a defect in an intake manifold gasket, another

19  plaintiffs' counsel devoted more than 58,000 hours over five years before resolving

20  the cases for cash reimbursements through a claims-made process.  *In Re General*

21  *Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda County 2008).

22         The reality is that any case against a major automotive manufacturer alleging a

23  defect in thousands of vehicles has the potential to take up significant amounts of the

24  Court's and the parties' resources. In addition, if the case were to proceed, Plaintiff

25  would need to retain multiple experts resulting in significant additional expenses.

26         It goes without saying that BMW would strongly oppose class certification

27  _____

28  [2] See, Harris Declaration, ¶¶ 16-17, 22-24.

1   were the case to proceed on the merits. "The value of a class action 'depends largely
2   on the certification of the class,' and . . . class certification undeniably represents a
3   serious risk for plaintiffs in any class action lawsuit." *Acosta v. Trans Union, LLC*,
4   243 F.R.D. 377, 392 (C.D. Cal. 2007) (quoting *In re GMC Pick-Up Truck Fuel Tank*
5   *Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d. Cir. 1995). As explained herein, Plaintiff's
6   counsel believe that this case is appropriate for class certification in the litigation
7   context. However, there is always a risk that a Court would not find this action
8   suitable for certification as a nationwide class or a multi-state class, or, even if class
9   certification were granted in the litigation context, class certification can always be
10  reviewed or modified before trial, and a class may be decertified at any time. *See*,
11  e.g., *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (the Ninth
12  Circuit reversed the certification of a nationwide class composed of consumers
13  seeking relief under California's consumer protection laws); *Wal-Mart Stores, Inc. v.*
14  *Dukes*, 131 S. Ct. 2541 (2011).

15       Given the favorable terms of the settlement and the manner in which these
16  terms were negotiated, the proposed settlement should be viewed, at least
17  preliminarily, as a fair, reasonable, and adequate compromise of the issues in dispute.
18  It is worthwhile for the Court to grant preliminary approval to the settlement, order
19  dissemination of notice to the class for comment, and proceed to a formal fairness
20  hearing.

21  **B.  Conditional Class Certification Is Appropriate for Settlement Purposes**
22       **1.  The Proposed Class Meets the Requirements of Rule 23**

23       Before granting preliminary approval of the Settlement, the Court should
24  determine that the proposed settlement class meets the requirements of Rule 23. *See*
25  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex
26  Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and 23(b)(3),
27  commonly referred to as numerosity, commonality, typicality, adequacy,
28  predominance, and superiority, shows that certification of this proposed settlement

1  class is appropriate.

2      **2.**      <u>**The Proposed Class Is Sufficiently Numerous and Ascertainable**</u>

3      The numerosity requirement is met where "the class is so numerous that

4  joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1).  Generally, courts

5  will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez*

6  *v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009)

7  (numerosity is presumed at a level of 40 members); *Consolidated Rail Corp. v. Town*

8  *of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of

9  40 members"); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th

10  Cir. 1969) (numerosity satisfied with class of 40 individuals); *Ikonen v. Hartz*

11  *Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1998) (finding a purported class of

12  40 members sufficient to satisfy numerosity).

13      Here, the proposed settlement class consists of all current and former owners

14  and lessees within the United States (including Puerto Rico) with over 164,000 Class

15  Vehicles sold in California alone.

16      **3.**      <u>**There are Questions of Law and Fact that Are Common to the**</u>

17                  <u>**Class**</u>

18      The second Rule 23(a) requirement is commonality, which is satisfied "if there

19  are questions of law or fact common to the class." Fed. R. Civ. P. 23(a) (2). The

20  "commonality requirement has been 'construed permissively,' and its requirements

21  deemed minimal.'" *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS

22  61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-

23  1020 (9th Cir. 1998). Moreover, "'there is clear justification for handling the dispute

24  on a representative rather than an individual basis' if 'common questions present a

25  significant aspect of the case and they can be resolved for all members of the class in

26  a single adjudication....'" *Mazza*, 666 F.3d at 589 (quoting *Hanlon*, 150 F.3d at

27  1022).

28      Here, each Class Member purchased or leased class vehicles. BMW contends

1  that the vehicles manufactured with the mechanical water pump are no more
2  susceptible to catastrophic failure than other vehicles, and thus perform appropriately
3  under normal driving conditions. It follows that the principal common questions of
4  law and fact which a trier of fact would need to resolve are whether the Mechanical
5  Water Pumps are defective, and if so, whether BMW had an obligation to apprise
6  consumers of the defect and make repairs relating to the defect at no cost to the
7  consumer. The need to determine whether an inherent defect exists not only satisfies
8  Rule 23's commonality requirement, it raises the very type of overarching common
9  question that has driven class certifications in other automotive defect cases. *See*,
10  e.g., *Hanlon*, 150 F.3d at 1020 (allegedly defective rear liftgate latches); *Parkinson v.
11  Hyundai Motor Am.*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008) (allegedly defective
12  flywheels); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004)
13  (allegedly defective engine intake manifolds); *Daffin v. Ford Motor Co.*, 458 F.3d
14  549, 552 (6th Cir. Ohio 2006) (allegedly defective throttle body assembly); *see also*
15  *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010) (reversing
16  denial of class certification in a case regarding allegedly defective tire alignment).

17  **4.    Plaintiff's Claims are Typical of the Proposed Settlement Class**

18  "Like the commonality requirement, the typicality requirement is 'permissive'
19  and requires only that the representative's claims are 'reasonably co-extensive with
20  those of absent class members; they need not be substantially identical.'" *Rodriguez*
21  *v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).
22  "In determining whether typicality is met, the focus should be on the defendants'
23  conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v.*
24  *AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is
25  "satisfied when each class member's claim arises from the same course of events,
26  and each class member makes similar legal arguments to prove the defendant's
27  liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v.*
28  *Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Here, Plaintiff asserts that Class Members' claims arising from the Mechanical Water Pump failures are reasonably coextensive with the legal claims asserted by the named Plaintiff. Each Class Member's claim arises from the same underlying conduct-namely, BMW's alleged concealment of an inherent defect in the Mechanical Water Pumps installed in the MINI Class Vehicles. In addition, Class Members have similar interests in the remedies being provided by the proposed settlement, which include reimbursements for replacing the water pumps and repairs associated with their failure.

**5.      Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class**

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, the proposed representative Plaintiff does not have individual interests in this litigation that conflict with the best interests of the class. To the contrary, Herremans and each Class Member have a common interest in obtaining reimbursement from BMW as a result of its alleged concealment of the Water Pump Defect. In addition, the named Plaintiff is represented by counsel well versed in prosecuting automotive class actions, and other class actions.

While the Court usually must speculate to some extent in assessing whether the named plaintiff and her counsel will adequately represent the class, in this case the Court can look to the proposed settlement negotiated by Plaintiff and her counsel. The settlement provides fair compensation for Class Members' claims by providing them with reimbursement for repairs to their Class Vehicles relating to water pump failures.

### 6.   <u>Common Issues Predominate Over Individual Issues</u>

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b) (1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class is maintainable under Rule 23(b) (3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy. *Id*. (citing Fed. R. Civ. P. 23(b) (3)).

Each class members' claims depends on whether his/her/its Class Vehicle suffers from an inherent Water Pump Defect, and thus raise just the sort of predominantly common questions courts have found to justify class treatment. *See*, e.g., *Hanlon*, 150 F.3d at 1022-1023 (allegedly defective rear lift gate latches); *Chamberlan*, 223 F.R.D. at 526 (allegedly defective engine intake manifolds); *Daffin*, 458 F.3d at 552 (allegedly defective throttle body assembly).  Moreover, proof of the manifestation of the defect is not a prerequisite to class certification. *Wolin*, 617 F.3d at 1173.

Preliminary approval is not precluded by *Mazza*, where after analyzing governmental interests, the court denied certification "[u]nder the facts and circumstances of [the] case," holding "that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594. In *Mazza*, plaintiffs' claims against a vehicle manufacturer were for false advertising.  "Thus, Mazza stands for the unremarkable proposition that it is difficult to certify a class where the class members are not all exposed to the same representations. This proposition has no relevance to [a] case, where Plaintiffs' theory is that Defendant's *omissions* violated the [states' consumer statutes] and that partial representations *on the product itself* are misleading." *Tait v. BSH Home Appliances Corp.*, SA CV 10-0711 DOC, 2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) (Emphasis in original). Here too,

Plaintiff's theory (set forth in the proposed amended complaint) is that BMW's failure to disclose the existence of the Water Pump Defect violated unfair and deceptive acts and practice laws of each state. In addition, the claims for breaches of express warranty and implied warranty of merchantability are based upon the same facts pertaining to each Class Member. Importantly, with respect to the warranty claims occurring within warranty, Class Members will not need to show that any particular warranty was delivered or made to them by BMW in order to be reimbursed under the Settlement Agreement. They need merely show proof of water pump failure resulting in out of pocket costs for repair and replacement arising out of said failure to a Class Vehicle occurring within the time and mileage limitations of the settlement.

### 7.    Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the class demonstrates the advantages of a collective bargaining and resolution process.

Addressing the allegations of an inherent defect in the design of the Class Vehicles' mechanical water pumps through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiff believed those alternatives, such as filing complaints with NHTSA or directly with BMW, would have proven ineffective in addressing the problem on a class-wide basis. Although the repair costs expended by consumers are not insignificant, costing an average of $388.94, the amount in controversy is not nearly

-25-

1  enough to incentivize individual action. See *Wolin*, 617 F.3d at 1175 ("Where

2  recovery on an individual basis would be dwarfed by the cost of litigating on an

3  individual basis, this [superiority] factor weighs in favor of class certification."). As

4  the Ninth Circuit found in the *Wolin* automotive defect case, "[f]orcing individual

5  vehicle owners to litigate their cases, particularly where common issues predominate

6  for the proposed class, [would be] an inferior method of adjudication." *Id*. at 1176.

7  "There would be less litigation or settlement leverage, significantly reduced

8  resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.  The

9  superiority of proceeding through the class action mechanism, on the other hand, is

10  demonstrable. By aggregating Class Members' claims, Plaintiff's counsel have been

11  able to expend the resources necessary to conduct discovery of the alleged Engine

12  Defect and negotiate a settlement with BMW that, if approved, will provide Class

13  Members with reimbursements for their repair costs. As the class action device

14  provides the superior means to effectively and efficiently resolve this controversy,

15  and as the other requirements of Rule 23 are each satisfied, certification of the

16  settlement class proposed by the parties is appropriate.

17  **C.      The Proposed Notice Plan Meets the Requirements of Rule 23**

18        Upon certifying a 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct

19  to class members the best notice that is practicable under the circumstances,

20  including individual notice to all members who can be identified through reasonable

21  effort."  In addition, Rule 23(e) (1) requires that before a proposed settlement may be

22  approved, the Court "must direct notice in a reasonable manner to all class members

23  who would be bound by the proposal."

24        The parties have agreed on a notice plan that satisfies the requirements of Rule

25  23. Under this plan, BMW will cause to be mailed notice of class certification and

26  the proposed settlement to all current and former owners and lessees of class vehicles

27

28

who can be reasonably identified.[3] The form of the notice to be mailed, attached as Exhibit 2 to the Harris Declaration, includes all the content required by Rule 23(c) (2) (B), such as a description of the action and class claims, as well as the Class Members' right to opt out or object to the proposed settlement, including any application for attorneys' fees, costs and service awards.

### 1.    It Is Appropriate To Refer To Class Counsel's Web Site In The Settlement Documents

The one issue the parties cannot agree to is whether it is appropriate to refer to the web site of counsel for Plaintiff in the notice and claim form, or whether the only web site which should be identified is the claims administrator's. Plaintiff contends that her counsel should be able to reach out to class members and communicate with them, as class counsel, to encourage them to make claims, and answer their questions. Thus, it is appropriate to refer to the settlement web site of Plaintiff's counsel for this purpose, in the settlement documents, so that class members can readily address their questions to counsel for Plaintiff and so that counsel for Plaintiff can encourage all eligible class members to make claims.

Plaintiff urges the court to permit Plaintiff's counsel to communicate with class members effectively, for the purpose of encouraging them to claim settlement benefits for which they are eligible.

////

////

////

////

////

////

---

[3] Moreover, the Agreement also provides for a web site and toll free number to be maintained in order to notify the Class Members about the Settlement, and to answer questions that they may have.

1

## IV. CONCLUSION

2    The Parties have negotiated a fair and reasonable settlement that almost

3 certainly never would have been arrived at but for the use of a class action as a

4 procedural device, a dedicated and informed Class Representative and experienced

5 Plaintiff's counsel. Preliminary Approval should thus be granted.

6

Dated: December 7, 2015            LAW OFFICES OF STEPHEN M. HARRIS,

7                                   P.C.

8

9                                   By:  /s/ Stephen M. Harris

10                                       Stephen M. Harris
                                         Attorneys for Plaintiff
11                                       TRISH HERREMANS,
                                         individually, and on behalf of a class
12                                       of similarly situated individuals

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28