1   Members. Class counsel used a toll-free phone center, which generated 402 unique

2   inbound calls, and returned those calls (and others) to answer class member inquiries.

3   There were also 117 emails sent to Class Counsel's dedicated email address. Class

4   Counsel responded to the email inquiries of Class Members, including those sent

5   directly to the dedicated email address and those sent directly to Class Counsel's

6   email addresses as reflected on the pleadings. These inquiries included issues relating

7   to claim documentation, eligibility, the amount of the claim, applicable deadlines,

8   deficiency letters, responding to deficiency letters, and curing of deficiencies. For

9   example, Mr. Harris (via email, fax, and phone) as of November 3, 2016, had

10   responded to 309 such inquiries. (Harris Declaration, ¶ 14.)

11          In addition to responding to class member inquiries Class Counsel also

12   communicated with the claims administrator, Rust Consulting, on behalf of the Class

13   Members, was instrumental in addressing the concerns raised in the two objections

14   so that the objectors withdrew their objections while agreeing to limit their recovery

15   to what they were owed under the settlement, and communicated with defense

16   counsel regarding settlement issues. (*Id.*, ¶ 15.)

17          Class counsel is in the process of assisting class members with curing any

18   deficiencies or obtaining a withdrawal of the notices of deficiency or rejection. And

19   class counsel has already succeeded in such efforts. Specifically, class counsel had

20   participated in resolving 46 notices of deficiency in favor of the class members, and a

21   total of 190 separate communications by class members have been made, seeking to

22   cure the deficiencies that they have been advised of. (*Id.*, ¶ 16.)

23          Finally, we will continue to communicate with class members, the claims

24   administrator and BMW after final approval, relating to rectifying notices of

25   deficiency, and appealing denial of claims. Since settlement benefits can be extended

26   to class members after final approval, class counsel's role will continue well after the

27   final approval hearing date. (*Id.*, ¶ 17.)

28

**H.  The Settlement**

      **1.  The Settlement Class**

      The settlement class consists of "all residents in the United States (including Puerto Rico), who currently own or lease or previously owned or leased, a Class Vehicle" ("Settlement Class"). (Agreement, § I, ¶ 10).) Excluded from the Settlement Class are the following: "(1) MINI [BMW], its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) insurers of the Class Vehicles; (3) all persons and/or entities claiming to be subrogated to the rights of Class Members; (4) issuers or providers of extended vehicle warranties or extended service contracts; (5) individuals and/or entities who validly and timely opt-out of the Settlement; (6) consumers or businesses that have purchased Class Vehicles previously deemed a total loss (i.e. salvage) (subject to verification through Carfax or other means); (7) current and former owners of a Class Vehicle who previously have released their claims against MINI with respect to the issues raised in the Litigation; (8) United States and Puerto Rico residents who have purchased Class Vehicles in the United States but have since transported the vehicle outside the United States for permanent use abroad; (9) any current or former owner or lessee of a Class Vehicle that has received or obtained a goodwill or warranty replacement of a Water Pump (unless the consumer had to pay or share in some portion of the cost of a goodwill replacement); (10) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children); (11) individual or entities that have purchased and/or leased Class Vehicles as "fleet" vehicles (i.e. rentals or company vehicles); and (12) Class Vehicles that were involved in accidents that resulted in damage and subsequent need to replace a Water Pump." (*Id.*)

      **2.  The Payment and Reimbursement Schedule**

      BMW's warranty normally extends only to four years or 50,000 miles, whichever comes first. (Harris Declaration, ¶ 34.) Here, the Settlement permits class

1  members to obtain reimbursement for out of pocket payments for past or future water

2  pump repairs up to seven years after the vehicle is first placed in service, or up to

3  84,000 miles on the odometer, whichever occurs first. (Agreement, § I, ¶¶ 28, 38, 40,

4  and §III, ¶¶ A and B).)

5        A water pump repair under the settlement includes repair or replacement of the

6  water pump, coolant, bolts, and gasket following a water pump failure, and

7  reasonable labor costs for repair. (*Id.*, § I, ¶ 40.) The maximum amount a class

8  member shall be reimbursed for a water pump repair is $500. (*Id.*, ¶ 25.) In contrast,

9  the data BMW has furnished relating to the cost of the warranty and good will claims

10  paid to date establishes that the average cost of a water pump repair is $403.39

11  (Harris Declaration, ¶ 10.)

12        Moreover, there is no monetary limitation on repair work performed for class

13  members after the effective date of the settlement. (Agreement, §III, ¶¶ A and B.)

14    3.    **The Notice to the Class and Others of the Settlement**

15        A Settlement Administrator was appointed under the Agreement who

16  disseminated notice of the Settlement and the hearing on a Final Approval Motion

17  (Haan Declaration, ¶¶ 1-8; Agreement §I, ¶ 9, § V).

18        Notices were sent by First-Class U.S. Mail, postage paid, to potential

19  Settlement Class members, including current and prior owners and lessees of Class

20  Vehicles. The procedure for giving notice to potential Settlement Class members is

21  set forth in Section I, Paragraph 26 and Section IV, paragraphs A-E, of the

22  Agreement. In addition to mail notice, the settlement administrator has maintained a

23  toll-free number and web site dedicated to advising Class Members about the

24  Settlement. (Haan Declaration, ¶¶ 1-8, 15-17, and Exhibit A, attached thereto.)

25        Class members had 90 days to submit a claim from the date of transmission of

26  the notice, via mail, email, or facsimile. (Agreement, § I, ¶¶ 2, 26; §§ IV-V; Haan

27  Declaration, Exhibit A.) Class members who experience a water pump failure after

28  the effective date of the settlement can have a repair performed by BMW, which will

1 cover 100% of the costs during the warranty period provided for in the settlement.

2 (Agreement, § I, ¶¶ 19, 38; § III, ¶ B.) Class members can also appeal denial of their

3 claims. (Agreement, § V, ¶ F.)

4        The Settlement Agreement, at Section VI, establishes the procedure for those

5 potential Settlement Class members who wish to be excluded from the settlement;

6 Section VII establishes the procedure for those potential Settlement Class members

7 who wish to object to the settlement. There were 112 exclusions and no objections.

8 (Haan Declaration, ¶¶ 10-11.)

9       **4.**    **The Release of the Class**

10        Class Members who do not opt out of the Settlement, according to the

11 procedures set forth in the Agreement, shall release any and all claims (including

12 unknown claims) or causes of action that were, or could have been, asserted by

13 Plaintiff or any Class Members against BMW, regarding the Water Pump or Water

14 Pump Repair on Class Vehicles as alleged in the Action (excluding potential claims

15 for personal injury, property damage or claims for subrogation). (Agreement, § VIII,

16 ¶ 5.)

17       **5.**    **Claims Administration/Notice**

18        The claims administrator mailed notice to 594,091 potential class members,

19 and states that there have been to date 4,883 claims which have been received, with

20 2,141 found to be in good order to pay. These 2,141 claims have an award value of

21 $1,006,931.20. There are 2,741 claims which are not yet deemed in good order. The

22 value of these claims, assuming a claim value of 470.31, is $1,289,116.49. To date,

23 there have been 1,572 cure letters to class members whose claim forms have been

24 deemed deficient, and as of October 31, 2016, 190 cure responses have been

25 received. Additional notices of deficiency will be mailed on November 14, 2016.

26 (Haan Declaration, ¶¶ 13-14; McNulty Declaration, ¶¶ 6-8.)

27       Moreover, we estimate that the total value of the settlement is $4,584,765.34

28 to $6,728,768.83, including anticipated future claims, deficiencies which are cured,

1   and future repair costs averted by the notice. (McNulty Declaration, ¶¶ 8-13; Harris

2   Declaration, ¶ 32.) This does not include the present and future claims administration

3   expenses of approximately $500,000.00. (Harris Declaration, ¶ 32.)

4          In contrast, there have been only 112 opt-outs and no objections, thus

5   establishing that the class approves the settlement of the parties. (Haan Declaration,

6   ¶¶ 10-11.)

7                                              **III.**

8                                         **ARGUMENT**

9   A.     <u>**The Court Should Approve The Settlement As Fair, Reasonable And**</u>

10         <u>**Adequate**</u>

11         To approve a class action settlement under Federal Rule Civil Procedure 23(e),

12   the Court must find that the settlement is "fair, reasonable, and adequate,"

13   recognizing that "it is the settlement taken as a whole, rather than the individual

14   component parts, that must be examined for overall fairness." (*Staton v. Boeing*, 327

15   F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

16   1029 (9th Cir.1998). "[T]he court's intrusion upon what is otherwise a private

17   consensual agreement negotiated between the parties to a lawsuit must be limited to

18   the extent necessary to reach a reasoned judgment that the agreement is not the

19   product of fraud or overreaching by, or collusion between, the negotiating parties,

20   and that the settlement, taken as a whole, is fair, reasonable, and adequate to all

21   concerned." (*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San*

22   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).)

23         In evaluating the fairness of the settlement, the Court should balance "the

24   strength of plaintiffs' case; the risk, expense, complexity, and likely duration of

25   further litigation; the risk of maintaining class action status throughout the trial; the

26   amount offered in settlement; the extent of discovery completed, and the stage of the

27   proceedings; the experience and views of counsel; the presence of a government

28   participant, and the reaction of the class members to the proposed settlement." (*Class*

1 | *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for*

2 | *Justice*, 688 F.2d at 625.).)

3 |       The relative degree of importance to be attached to any particular factor will

4 | depend upon and be dictated by the nature of the claims advanced, the types of relief

5 | sought, and the unique facts and circumstances of each case. (*Nat'l Rural Telecomms.*

6 | *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for*

7 | *Justice*, 688 F.2d at 625).)

8 |       In affirming the settlement approved by the trial court in *Class Plaintiffs*, the

9 | Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested

10 | issues of fact and law which underlie the merits of the dispute, for it is the very

11 | uncertainty of outcome in litigation and avoidance of wasteful and expensive

12 | litigation that induce consensual settlements." (*Class Plaintiffs*, 955 F.2d at 1291

13 | (internal quotation and citation omitted).)

14 |       Where, as here, the settlement is the product of arm's length negotiations

15 | conducted by capable counsel with extensive experience in complex class action

16 | litigation, the court begins its analysis with a presumption that the settlement is fair

17 | and should be approved. (See 4 NEWBERG ON CLASS ACTIONS (4th ed.) §

18 | 11.41.) As discussed in greater detail below, the settlement presented here is entitled

19 | to a presumption of fairness. First, the settlement was reached only after extensive

20 | arm's-length negotiations. (See Harris Declaration, ¶¶ 33-34.)

21 |       Thus, there is no indication of collusion.

22 |       Second, Class Counsel and counsel for BMW are experienced in class action

23 | litigation, acted in good faith, and represented their clients' best interests in reaching

24 | the settlement. (*Id.*, ¶¶ 33-36.) In addition, Plaintiff supports the settlement, which

25 | also supports approval, as shown below.

26 |     1.    **The Settlement and the Substantial Benefits It Provides to the Class**

27 |          **Support Final Approval**

28 |       Here, class members receive reimbursement for out of pocket expenses, based

-16-

1  on the reimbursement formula of the settlement for out of pocket expenses incurred.

2  Class Members can be reimbursed for up to $500.00 for each water pump repair, and

3  can have their vehicle repaired for free after the effective date of the settlement, for

4  future water pump failures.

5        A vehicle normally is eligible for warranty coverage for four years or 50,000

6  miles. The settlement provides benefits for up to seven years after the vehicle is

7  placed in service, or up to 84,000 miles, far in excess of the original warranty.

8  Moreover, class members receive notice of the potential of a water pump failure and

9  can bring it in for repair for free after the final approval date without any limitation

10  as to the repair cost.

11        This result compares favorably with results achieved in other cases. (Cf.

12  *Daniel v. Ford Motor Co.*, No. 11-cv-2890, 2013 WL 3146810, at *6 (E.D. Cal. June

13  18 2013) (denying class certification in suspension defect case); see also *Samuel-*

14  *Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (Penn. 2011) (nearly 12 years after

15  the commencement of the action, the Supreme Court of Pennsylvania ultimately

16  affirmed award for brake repairs.[2])

17        What is more, the claims process here allows Settlement Class members to

18  obtain these benefits by completing a simple form and providing basic

19  documentation, without requiring Settlement Class members to meet the full

20  evidentiary burdens they could face in individual litigation or in a claims process

21  following a successful class trial. This factor therefore strongly supports settlement

22  approval. (*Hopson v. Hanesbrand Inc.*, 2009 WL 928133 at *8 (N.D. Cal. 2009)

23  (holding that benefits of settlement supported approval where recovery "appear[ ed]

24

25  _____

26  [2] See also *Henderson v. Volvo Cars a/North America*, Case No. 09-4146-CCCJAD (D.N. 2012), Docket No. 71-1 (settlement agreement) § III.A (providing 8

27  year/100,000 mile extended warranty and reimbursement of either 50% for original

28  owners and lessees, or 25% for all other class members, for out-of-pocket costs for

allegedly defective automatic transmissions.)