Stephen M. Harris, Esq. (State Bar Number: 110626)
email: stephen@smh-legal.com
LAW OFFICES OF STEPHEN M. HARRIS, P.C.
6320 Canoga Avenue, Suite 1500
Woodland Hills, California 91367
Telephone: (818) 924-3103
Facsimile: (818) 924-9079

Robert L. Starr, Esq. (State Bar Number: 183052)
email: robert@starrlaw.com
Adam M. Rose, Esq. (State Bar Number: 210880)
email: adam@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23277 Ventura Boulevard
Woodland Hills, California 91364
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
TRISH HERREMANS, individually, and on behalf
of a class of similarly situated individuals

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| TRISH HERREMANS, individually, and on behalf of a class of similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>　　　　Defendant. | NO.　CV14-2363 MMM(PJWx)<br><br>Assigned for All Purposes to the Honorable George H. Wu<br><br>Date:　　　November 28, 2016<br>Time:　　　8:30 a.m.<br>Ctrm:　　　10<br><br>**DECLARATION OF STEPHEN M. HARRIS SUPPORTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT** |

-1-

I, Stephen M. Harris, declare and state as follows:

1. I am an attorney licensed to practice in the State of California. I am affiliated with the law firm of the Law offices of Stephen M. Harris, P.C., attorneys' of record for plaintiff Trish Herremans ("Plaintiff" or "Herremans") on behalf of herself and all others similarly situated. I am the attorney responsible for the handling of this matter, along with Robert Starr of the Law Offices of Robert L. Starr, APC. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

2. I submit this declaration in support of Plaintiff's motion for final approval of the parties' Settlement Agreement, a true and correct copy of which is attached as Exhibit 1. True and correct copies of the Notice to the Class and Claim Form are attached as exhibit A to the declaration of Ann Haan. A true and correct copy of the declaration of Ann Haan is attached hereto as exhibit 2.

## PROCEDURAL HISTORY

3. On March 27, 2014, Herremans brought a class action against BMW on behalf herself and a class of California consumers alleging (1) violations of California Consumer Legal Remedies Act, (2) violations of California Unfair Business Practices Act, and (3) Fraud. (Docket No. 1.) After Plaintiff filed a First Amended Complaint in June of 2014, BMW brought a motion to dismiss, which was opposed by Herremans. The court granted the motion, with leave to amend on October 3, 2014. (Docket No's. 17, 21, 24, 30.)

4. Herremans then filed a Second Amended Complaint. BMW again brought a motion to dismiss, which was opposed by Herremans. The court again granted the motion, with leave to amend. (Docket No's. 33, 36, 40, 41, 42.) Herremans then filed a Third Amended Complaint on March 11, 2015. (Docket No. 43.) BMW declined to file another motion to dismiss, and instead agreed to

participate in a mediation. Accordingly, BMW filed its answer to the operative complaint on March 25, 2015. (Docket No. 47.)

5. Discovery in this matter has shown that 164,932 Class Vehicles were sold in California, while 298,038 were sold nationwide. The Class Vehicles consist of BMW (also known as "MINI") R55, R56, R57, R58, R59, and R60 vehicles, with a production date from October of 2006 through November of 2012, as more fully described in the Agreement.

6. Plaintiff asserts that the Class Vehicles contain a defective mechanical water pump, which leaks and thereafter causes engine overheating. This can lead to the vehicle stalling or loss of the use of the power steering and breaking systems, thereby making the vehicle difficult to operate. Plaintiff alleges the mechanical water pump causes engine failure, or loss of power ("Water Pump Defect"). The factual basis for these allegations is more fully described in the accompanying motions.

7. BMW did not dispute that the mechanical water pumps failed, instead arguing that the failures were due to the plastic cover of the mechanical water pump, rather than the design problems identified by Plaintiff. BMW contends that a change of design in the pump, to use an alloy cover rather than a plastic one, was followed by a dramatic decline in the failure rate, discussed below.

8. Plaintiff hired an expert (Timothy C. Saurwein) to assess the contentions by BMW concerning the reason for the failure of the water pumps. Saurwein verified that BMW's position was correct, because the alloy cover was considerably stronger than the plastic cover. But Saurwein also determined that Plaintiff's initial analysis of the reason for the failures was supported by the redesign of the water pump by BMW, since the alloy pump uses a combination of one row of ball bearings and one row of roller bearings, as opposed to the previous two-row ball bearing configuration utilized with the plastic cover. Plaintiff's consultant thus confirms that the redesigned configuration also makes the alloy water pump more robust than the previous design.

-3-

9. Plaintiff and BMW have reached a settlement of nationwide class claims subject to final approval by this Court. BMW has agreed to reimburse all class members who have, or will, incur costs in connection with repairing or replacing a mechanical water pump, when the damage results from a water pump failure, subject to the maximum time and mileage limitations in the Agreement. The maximum payment amount for a water pump repair is $500.00. However, there is no such limitation applicable to repair work performed after final approval of the Settlement.

10. The data BMW has furnished relating to the cost of the warranty and good will claims paid to date establishes that the average cost of a water pump repair paid under warranty or good will is approximately $403.39. In contrast, the average approved reimbursement amount for class members to date (for water pump repairs claims under the settlement) is approximately $470.31.

## CLASS COUNSEL DISCOVERY AND INVESTIGATION

11. Plaintiff conducted a pre-filing and post-filing investigation, including, but not limited to, retaining an expert consultant regarding water pump failures, detailed analysis of the design of the mechanical water pump in existence prior to the change of the design by BMW, in comparison to the design of the water pump which was adopted in or around 2012, review of technical service bulletins, review of publicly available information relating to the nature and extent of the mechanical water pump problem, and obtaining and reviewing approximately 3,000 pages of documents produced by BMW in response to Plaintiff's formal discovery requests.

12. Plaintiff also monitored complaints on NHTSA, reviewed data concerning MINI sales, and obtained informally from BMW sales data, warranty and good will claims data, call center records, PUMA (investigations of customer complaints) records, as well as design data.

13. Although the claims administrator maintained a web site and toll-free number as provided for in the Agreement, Plaintiff hired a separate company to create an informational web-site about the settlement. The company, Next Client,

used search optimization, structured use of key words, blogs, social media communications and other devices to alert class members about the settlement and its benefits. Class counsel reviewed and approved all these communications. The Next Client web-site generated 1,140 unique page views. See, also, Haan Declaration, ¶¶ 15-17, setting forth the statistics for the web-site and toll free number maintained by the claims administrator.

14. Class counsel also answered telephone and email inquiries from Class Members. Class counsel used a toll-free phone center, which generated 402 unique inbound calls, and returned those calls (and others) to answer class member inquiries. There were also 117 emails sent to Class Counsel's dedicated email address, which was created to permit Class Members to inquire about the settlement. Class Counsel responded to the email inquiries of Class Members, including those sent directly to the dedicated email address and those sent directly to Class Counsel's email addresses as reflected on the pleadings. These inquiries included issues relating to claim documentation, eligibility, the amount of the claim, applicable deadlines, deficiency letters, responding to deficiency letters, and curing of deficiencies. For example, Mr. Harris (via email, fax, and phone) as of November 3, 2016, had responded to 309 such inquiries.

15. In addition to responding to class member inquiries, Class Counsel also communicated with the claims administrator, Rust Consulting, on behalf of the Class Members, communicated with defense counsel regarding settlement issues, and addressed the concerns raised in the two objections. The objectors withdrew their objections, agreeing to limit their recovery to what they were owed under the settlement.

16. Class counsel is in the process of assisting class members with curing any deficiencies or obtaining a withdrawal of the notices of deficiency or rejection. And class counsel has already succeeded in such efforts. Specifically, class counsel has participated in resolving 46 notices of deficiency in favor of the class members,

1  and a total of 190 separate communications by class members have been made to
2  date, seeking to cure the deficiencies that they have been advised of.

3      17.    Finally, we will continue to communicate with class members, the
4  claims administrator and BMW after final approval, relating to rectifying notices of
5  deficiency, and appealing denial of claims. Since settlement benefits can be extended
6  to class members after final approval, class counsel's role will continue well after the
7  final approval hearing date. We estimate that this will involve approximately 250
8  additional hours of time spent working on this matter.

9      18.    BMW has furnished Plaintiff with information relating to mechanical
10 water pump failures in California, where most Vehicles are sold.

11     19.    During production years October of 2006 to November of 2012, BMW
12 utilized a thermoplastic housing on the water pump in the Class Vehicles. During this
13 period of time, warranty and goodwill claims of California owners of Mini Vehicles
14 equipped with a plastic housing on the water pump were made at the rate of
15 approximately 7.5% all such Vehicles sold in California. This involved 8,836
16 warranty and good will claims out of the 118,875 vehicles sold during this time
17 frame. In 2013 to 2014, after BMW began producing Class Vehicles with an alloy
18 Water pump, Warranty claims for Mini vehicles relating to water pump failure
19 plunged to approximately 1% or less of vehicles sold.

20     20.    To date, in California BMW has spent $3,800,374.28 in warranty and
21 goodwill repairs associated with vehicles experiencing failure of the mechanical
22 water pump. The total number of warranty and good will claims granted in California
23 during October of 2006 to 2014 is 9,421. The corresponding number of vehicles sold
24 in California with a thermoplastic housing is 164,932.

25     21.    Nationwide, 298,038 Class Vehicles were sold. Thus, assuming a
26 nationwide failure rate equivalent to California, this would result in 7,603 water
27 pump failures of vehicles outside of California, and a corresponding repair of said
28 water pumps, at an average price of $403.39, under good-will and warranty. See,

1 declaration of Jennie McNulty, a true and correct copy of which is attached hereto as
2 exhibit 3, ¶¶ 1-6.
3     22.    The total amount BMW spent on good-will and warranty claims in the
4 past, nationwide, thus is estimated to be $6,867,411.72. *Id* at ¶ 6, b.

### MEDIATION/RESOLUTION

6     23.    On May 19, 2015, the parties participated in a full day mediation session
7 with the honorable Edward A. Infante. The parties agreed on all aspects of the
8 settlement (other than attorneys' fees, costs, and the enhancement) after this
9 mediation session, including agreement to a nationwide class for settlement purposes
10 only. The parties signed a document titled "Herrreman's Settlement Matrix" after the
11 conclusion of these negotiation sessions.
12     24.    Subsequent to the mediation, the parties negotiated the attorneys' fees,
13 costs, and the enhancement amount. These items were formally agreed to in July of
14 2015, with the assistance of the mediator.
15     25.    Thereafter, the parties negotiated the formal settlement agreement,
16 notice and claim form. The parties reached final agreement regarding the terms of
17 these documents in November of 2015.
18     26.    The one issue the parties could not resolve is whether it was appropriate
19 to refer to the web site of counsel for Plaintiff in the notice and claim form, or
20 whether the only web site which should be identified is the claims administrator's. At
21 the preliminary approval hearing, the court stated that it would not order the notice to
22 contain information concerning Class Counsel's web-site since the parties had not so
23 provided in their agreement.
24     27.    The court granted several extensions of time for Plaintiff to file a class
25 certification motion, or a motion for preliminary approval, while the parties
26 continued with their negotiations. (See, Docket No.'s 48, 53, and 55.) Ultimately, the
27 court granted the stipulation of the parties to have the motion filed and heard. (See,
28 Dockets No.'s 56-57.)

28. The motion for preliminary approval was initially heard on February 18, 2016. (See, Docket No. 62.) Based on the court's guidance at the hearing, the parties filed supplemental papers in support of the preliminary approval motion, which was granted on March 18, 2016. (See, Docket No.'s 62-66.)

29. As part of the settlement, Plaintiff filed a Fourth Amended Complaint, consistent with the terms of the settlement, and asserting claims on a nationwide basis. (See, Docket No.'s 58-5 and 66.)

## CLAIMS ADMINISTRATION DATA/CASE VALUE

30. The claims administrator mailed notice to 549,091 potential class members, and 4,882 claims have been made to date, with 2,141 found to be in good order to pay. These 2,141 claims have an award value of $1,006,931.20. There are 2,741 claims which are not yet deemed in good order. The value of these claims, assuming an average value of 472.31, is $1,289,116.49. To date, there have been 1,572 cure letters to class members whose claim forms have been deemed deficient, and as of October 31, 2016, 190 cure responses have been received. Additional notices of deficiency will be mailed on November 14, 2016. See, Haan Declaration ¶¶ 4-14; McNulty Declaration, ¶ 6, c.

31. There have only been 112 opt outs and no objections. Two objections were made, but these objections were both withdrawn in emails sent to Class Counsel since one class member erroneously believed he was not part of the class (but he was) and the other class member had an issue with labor costs charged by an independent repair facility, as opposed to any limitation in the settlement. (See, also, Haan Declaration ¶¶ 10-11.) Nor has any Attorneys General objected.

32. Moreover, we estimate that the total value of the settlement is $4,584,765.34 to $6,728,768.83, including anticipated future claims, deficiencies which are cured, and future repair costs averted due to the notice. See, McNulty Declaration, ¶¶ 8-13. This does not include the present and future claims administration expenses, which are conservatively estimated to be approximately

-8-

$500,000.00.

## THE SETTLMENT IS FAIR AND REASONABLE

33. After thorough research, investigation, and evaluation of the claims, the parties engaged in arm's length, good faith settlement negotiations. Counsel for Defendant and Class Counsel (who both have a considerable amount of experience in handling cases of this type) participated in lengthy, serious, and informed negotiations, before the Settlement that is now placed before this Court for final approval was reached.

34. Based on the negotiations and a detailed knowledge of the issues present in this action, I am convinced that this settlement is in the best interests of the Class Members. For example, discovery and investigation has revealed that BMW's warranty normally extends only to four years or 50,000 miles, whichever comes first. Here, the Settlement permits class members to obtain reimbursement for out of pocket payments for past or future water pump repairs up to seven years after the vehicle is first placed in service, or up to 84,000 miles on the odometer, whichever occurs first. (Agreement, § I, ¶¶ 28, 38, 40, and §III, ¶¶ A and B).) Moreover, as noted above, the average cost of a water pump repair under warranty or good will was approximately $403, while the maximum cost of a water pump repair agreed to by BMW, in connection with the settlement, is $500.00. Claims approved under the settlement are presently averaging $470.31, while class members can have their vehicles repaired for free after the final approval date without any limitation on the value of the repair. See, Haan Declaration, ¶ 13; Agreement, § III, B.

35. I have balanced the terms of the settlement, including both the benefits conferred to the Plaintiff and Class Members by the settlement, against the probability of obtaining class certification, liability and the range of recovery issues at trial. The risks of trial and other normal perils of litigation, including the affirmative defenses asserted by BMW, difficulties of complex litigation, including the fact that Plaintiff's motion for certification would have been vigorously contested

(including any effort to obtain nationwide certification), lengthy process of establishing specific damages, and various possible delays and appeals were also carefully considered by class counsel in agreeing to the proposed settlement. BMW vigorously denied liability in this case, and asserted it had no duty to disclose the defect to consumers, and that Plaintiff could not prove the alleged defect is safety related. BMW also raised a statute of limitations defense to the named Plaintiff's claim. Moreover, if the parties had been unable to resolve this case through settlement, the continued litigation would have been expensive and lengthy, requiring significant and costly involvement from expert witnesses.

36. I have practiced law in the State of California since 1983, and during my practice devote a significant percentage of my time to employment, wage and hour, and consumer matters, including class action litigation. I am experienced in class actions, including wage and hour matters, consumer cases and other class actions. An example of class action and representative litigation I have been involved in is set forth below:

a. *Bacon v. County of Los Angeles*, Case No. BS058574; the settlement of this case (filed in August of 1999) for up to 45 million dollars was approved by the County Board of Supervisors after Plaintiffs succeeded in reversing denial of class certification on appeal and prevailed in their individual test cases; final approval of this settlement was granted in August of 2011;

b. *Schneider v. First Union*, Case No. BC282338, class action litigation concerning Financial Advisors promissory note bonuses;

c. *Clark v. First Union*, Case No. BC281734 (case asserting Financial Advisors were misclassified as exempt which was removed to federal court and then settled (with final approval occurring in October of 2009) along with other related litigation for 39 million dollars; *see*, related court of appeal opinion, *Clark v. First Union*, 153 Cal.App.4th 1595 (2007));

d. *Arfat v. Déjà vu*, Case Number BC367362, wage and hour case

which has been recently certified as a class action;

  e. *Hills v. Déjà vu*, Case Number BC385610, class action on behalf of dancers employed by Déjà vu which was certified as a class action in June of 2010;

  f. *Cazares v. Pacific Shore and Cazares v. Household Finance*, Case Nos. CV04-2548 DSF (SSx) and CV 04 6887 DSF (SSx), consolidated consumer class actions involving, *inter alia*, Unfair Competition claims;

  g. *Banks v. GMAC*, Case No. CV 04-02477 LGB (AJWx) [involving similar claims to those of *Cazares*];

  h. *Pacific Shore Funding v. Lozo*, 138 Cal.App.4th 1342 (2006) [litigation related to *Cazares* which resulted in a published court of appeal decision];

  i. *Marsikyan v. Mercedes*, Case Number CV08-04876 AHM (JTLx), a consumer class action case which settled on a nationwide basis and which was finally approved in May of 2010;

  j. *Alvarado v. X-Ray, Inc.,* Case Number, BC387836, wage and hour case which was certified as a class;

  k. *Bruce v. Harley Davidson, Inc.*, Case Number CV09-6588 CAS(RZx) [consumer class action litigation relating to defects in Harley-Davidson motorcycles];

  l. *Perez v. Lewis, Marenstein*, Case Number, BC391313, wage and hour case on behalf of a class of 60 employees which settled for $750,000;

  m. *Lewis v. The Gamekeeper, LLC*, Case Number BC307823 [wage and hour class action resolved for $970,000];

  n. *Smith v. Oceanview Wireless, LLC,* BC388475 [wage and hour class action relating to wage deductions];

  o. *Poulson v. Dailey News, NO. CV 04-5254 JSL (Ex)*[unfair competition claims premised on Fair Debt Collection Practices Act];

-11-

   p. *Poulson v. Orkin* [similar to *Poulson v. Dailey News*];

   q. *Poulson v. Time, Inc., BC 298697* [similar to *Poulson v. Dailey News*].

   r. *Narouz v. Charter*, CV06-02914 DMG (MANx), which is currently assigned to the Hon. Dolly Gee, who granted final approval of class action settlement after successful appeal of denial of approval of settlement (see, *Narouz v. Charter*, 591 F.3d 1261 (9th Cir. 2010);

   s. *Trauth v. Spearmint Rhino*, and *Omlor v. Spearmint Rhino*, related class action litigation against Spearmint Rhino. The district court granted final approval to this approximately $12,000,000 settlement (also containing injunctive relief provisions) in November of 2012;

   t. *Vadura v. Paddy Murphy's*, case pending in orange county superior court. The court granted final approval of a $700,000 class action settlement on behalf of exotic dancers. This settlement also required the defendant to reclassify its employees, cease imposing financial penalties upon them, and refrain from continuing to charge them stage fees; and

   u. *Doushkess v. Ruchel Enterprises*, BC436794, was a case seeking relocation benefits on behalf of elderly residents of the Pasadena Manor. The $300,000 settlement of this case was granted final approval in October of 2012 by the Honorable John Shepard Wiley, Jr.;

   v. *Eisen v. Porsche*, CV11-9405 CAS (FFMx), involving nationwide settlement of claims on behalf of owners/lessors of certain Porsche vehicles with engines containing a claimed defective Intermediate Shaft which can fail, requiring repair of engine damage or engine replacement. The honorable Christina Snyder granted Plaintiff's motion for final approval on January 30, 2014. The value of this settlement is estimated to be approximately $6,000,000;

   w. *Munoz v. Chipotle*, BC447232, Class Action relating to employee wage deductions for the cost of Shoes for Crews slip resistant shoes;

          x.    *Lewings v. Chipotle*, BC496628, Class Action involving Chipotle imposing workers compensation costs on employees, with California court of appeal reversing, in July of 2015, trial court order granting summary judgment.

37. I participated in all aspects of this case, including, but not limited to, drafting of pleadings, legal research, preparing the opposition to the motions to dismiss, contact with the Plaintiff, review and analysis of BMW documents, review and analysis of publicly available documents, communicating with co-counsel and staff personnel, contact with experts, attending the mediation, participating in all aspects of the settlement negotiations and settlement documents, researching and drafting motion papers, including the preliminary approval and final approval papers, contact with class members, the defense attorney and the claims administrator, hiring and reviewing the work product of Next Client, including articles and blog materials, and all other aspects of the litigation.

38. Robert Starr possesses extensive class action experience, including experience in consumer class actions. See, e.g., *Olson v. Volkswagen*, No. 2007-cv-05334 (C.D. Cal. 2008) (automotive defect class action lawsuit with a class size of over 170,000 vehicles, settling for an amount valued in excess of ten million dollars); *Marsikian et al. v. Mercedes-Benz USA, LLC*, No. 08-04876-AHM (C.D. Cal.2010) (automotive defect nationwide class action settlement involving over 100,000 vehicles with an alleged water leak defect).

39. Mr. Starr conducted an extensive legal and evidentiary investigation prior to the filing of the lawsuit, was involved in the drafting of the lawsuit, interacted with the client, conducted extensive outreach to the automotive industry in order to ascertain the failure rate and failure mode, worked closely with automotive failure analysis and materials experts in order to identify the root cause of the water pump failure, worked on pleadings challenges, participated in the mediation and settlement discussions, initiated a process to be used during the claims phase in order

to track incoming class member inquiries and respond to these inquiries, worked with claimants and the claims administrators to answer class member questions, and facilitated the processing of claims and addressing claims deficiencies.

40. Adam Rose has been a licensed attorney since December 2000, with extensive background in class action litigation and automotive defect litigation. He assisted in analyzing the motions to dismiss, conducted research, and was involved in the procedural steps of the litigation. Jacob Kashani has been a licensed attorney since September 2014, with extensive knowledge of consumer automotive law and automotive defect analysis. He initiated outreach to automotive repair facilities and automotive dismantlers in order to obtain exemplar functioning pre-design change water pumps, failed pre-design change water pumps, and functioning redesigned water pumps in preparation for failure analysis, gathered information from automotive repair facilities and automotive dismantlers regarding consumer experiences with pre-design change water pumps and redesigned water pumps, and visited automotive repair facilities and automotive dismantlers in order to gather information regarding the water pump defect, failure rate, and post redesign failure rate. He also interfaced with the expert hired to analyze the alloy water pump and the plastic water pump.

41. Plaintiff's Counsel's hourly rates range from $350 to $725. These rates are supported by the rates discussed in below, and the attached exhibit 4. Moreover, in the *Marsikyan*, *Clark*, *Trauth* and *Eisen* matters, referred to in paragraph 36, the court awarded attorneys' fees' at nor near the rate of $600.00-$700.00 an hour for my time. Also, in the *Bacon* case, referred to in paragraph 36, my firm was awarded attorneys' fees based on a blended rate of $547.00 an hour for all personnel (including declarant) and a multiplier of 2.0.

42. The hourly rates for Mr. Starr (and declarant) are comparable to those charged by the Los Angeles offices of Sheppard Mullin Richter & Hampton ("Sheppard Mullin") ($505 to $860) and Manatt, Phelps & Phillips ("Manatt

-14-

Phelps") ($540 to $850). See 2011 Nationwide Sampling of Law Firm Billing Rates – The National Law Journal, December 19, 2011 ("2011 Nationwide Sample of Law Firm Billing Rates") (a true and correct copy of which is attached hereto as Exhibit 4). Starr's rate and my rate are also comparable to those approved for other plaintiff's firms. See, e.g., *Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825, *2 (N.D. Cal. Feb. 15, 2011) (approving hourly rates of $650 an hour for partner services); *Richard v. Ameri-Force Mgmt. Servs., Inc*. (San Diego Super. Ct. No. 37-2008-00096019, Aug. 27, 2010,) ($695 to $750 an hour for partners); *Barrera v. Gamestop Corp*. (C.D. Cal. No. CV 09-1399, Nov. 29, 2010) ($700 an hour for partners); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. No. CV 07-4480, June 20, 2010) ($655 to $750 an hour for partners); *In re Wells Fargo Loan Processor Over-Time Pay Litigation*, 2011 WL 3352460 (N.D. Cal. No. 07-1841, Aug. 2, 2011) (approving hourly rates of $500-$675 for attorneys); *In re Nuvelo, Inc. Securities Litig*., 2011 WL 2650592 (N.D. Cal. No. 07-04056, July 6, 2011) (approving $500-$700 for partners); *In re Charles Schwab Corp. Securities Litig*., 2011 WL 1481424 (N.D. Cal. No. 08-01510, Apr. 19, 2011) (approving $380-$650 for partners); and *Buccellato v. AT&T Operations, Inc*., 2011 WL 4526673 (N.D. Cal. No. 10-00463, June 30, 2011) (approving $290-$740 for attorneys).

43. Starr's hourly rate is consistent with his approved rates in other cases. See *In Re Mini Windshield Actions*, Case No. 2:10-cv-01151-ABC (PJWx) (C.D. Cal. October 1, 2012) (approving hourly rate of $675 as the managing partner of the Starr law firm); *Marsikian v. Mercedes-Benz USA, LLC*, Case No. 08-CV-04876-AHM-FMO (C.D. Cal. May 17, 2010) (approving hourly rate of $545).

44. Attached hereto as exhibit 5 is a true and correct copy of the Laffey Matrix, which also supports the rates claimed herein. The Laffey Matrix also supports the rates claimed for support staff. Attached hereto as exhibit 6 is a true and correct copy of survey data regarding billing rates of support staff. This survey also supports the billing rates claimed herein for our support staff, with rates in the survey

frequently exceeding $200.00 per hour. See, e.g., exhibit 6, pp. 556, 559.

45. The rates for Adam Rose and Jacob Kashani are also comparable to those charged by Sheppard Mullin. Sheppard Mullin's Associate rates range from $275 to $635 an hour. See 2011 Nationwide Sampling of Law Firm Billing Rates. The hourly rates for Rose and Kashani are also comparable to those of Manatt Phelps. Manatt Phelps' average Associate hourly rate is $464. *Id.* Rose and Kashani's rates are also comparable to those approved for other plaintiff's firms. See, e.g., *Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825, * 2 (N.D. Cal. Feb. 15, 2011) (approving hourly rates of $500 an hour for associate attorney services); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-00096019) (approving $495 an hour for associates); *Barrera v. Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) (approving $475 an hour for associates); and *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20, 2010, No. CV 07-4480) (approving $300 to $515 an hour for associates).

46. Records of the time spent on this matter and costs have been maintained both my offices and those of Mr. Starr's. These records include time and costs while I have worked at my present and former firm.

47. Upon the Court's request, Plaintiff's Counsel will provide the Court with our billing records on this case. However, under California law, courts may approve attorneys'fees without reviewing detailed timesheets and regularly do so. See *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 64 (2008) ("detailed timesheets are not required of class counsel to support fee awards in class action cases"); *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1006–1007 (1982) (the court may award fees based on time estimates); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254-55 (timesheets are not required of counsel to award attorneys' fees in class action cases); *Glendora Community Redevelopment Agency v. Demeter,* 155 Cal. App. 3d 465, 470-471, 478 (1984) (a court may approve attorneys' fees based on billing summaries provided by counsel); *Lobatz v. U.S. West Cellular of*

*California, Inc.*, 222 F. 3d 1142, 1148 (9th Cir. 2000) (holding detailed timesheets not required where fees were agreed upon in settlement agreement).

48. To date in this case, the Law Offices of Stephen M. Harris has incurred total costs of $8,781.81, while the law offices of Robert L. Starr, APC has incurred costs of $20,174.05 which were reasonably incurred in the prosecution and resolution of this case. Additional costs (including expert costs) are expected to be incurred before final resolution of this matter.

49. The following table lists Class Counsel and their personnel whose work on the case is included in the lodestar figure. This is based on time recorded up to November 4, 2016, and does not include time recorded after that date. This summary was prepared based on contemporaneous billing records and includes each individual's hourly rate in this matter:

| Name | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|
| **PARTNERS/PRINCIPALS** | | | |
| Stephen M. Harris | 494.30 | $725 | $358,367.50 |
| Robert L. Starr | 412.70 | $675 | $278,572.50 |
| **NON-PARTNER ATTORNEYS** | | | |
| Adam Rose | 22.3 | $550 | $12,265 |
| Jacob Kashani | 40 | $350 | $14,000 |
| **PROFESSIONAL SUPPORT STAFF** | | | |
| Gordon Wong (paralegal) | 59.5 | $150 | $8,925 |
| Manny Starr (Database expert and certified Salesforce | 20.1 | 175 | $3,517 |

| | | | |
|---|---|---|---|
| administrator; arranged for dedicated phone number and web-site, and implemented processes to track contact with class members) | | | |
| Sarah Sterling (law student, class member coordinator) | 21.3 | $125.00 | $2,662.50 |
| Jasper Cruz (class member coordinator) | 63.8 | $125.00 | $7,975 |
| **TOTAL LODESTAR:** | | | $686,664.50 |

50. By accepting this case on a contingent basis, Class Counsel was precluded from undertaking other similar matters. In that regard, Class Counsel would not have accepted the retention in this case, but for the opportunity to earn a multiplier on our time. Class Counsel believes that application of a multiplier would be warranted due to the risks Class Counsel ran in prosecuting this case and the employment opportunities they gave up as a result. However, the considerable post-settlement communication with Class Members (and other work discussed above) that will be required, and has been performed, and deduction of costs from the fee award, will result in an award of a negative multiplier.

51. My former firm no longer asserts a lien claim in this case, having agreed to withdraw it. There is a fee division agreement consented to by the client, governing division of the fee between myself and Mr. Starr. We have agreed to divide the fee award equally, or on a 50/50 basis.

////
////
////
////

-18-

**INCENTIVE AWARDS**

52. The requested $2,500 incentive award for the representative Plaintiff is fair and reasonable. Plaintiff has been actively involved in this case, assisting in the investigation, and consulting with Plaintiff's counsel. Plaintiff's efforts are more particularly described in her declaration.

I declare under penalty of perjury under the laws of the State of California and the United States that the forgoing is true and correct.

Executed this 7th day of November 2016, at Woodland Hills, California.

/s/ Stephen M. Harris
STEPHEN M. HARRIS